Filed 1/6/21  P. v. Saleh CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WASAIM QAHTAN SALEH,<br><br>        Defendant and Appellant. | A158509<br><br>(Solano County<br>Super. Ct. No. VCR230787) |

Wasaim Qahtan Saleh appeals from the trial court's orders following his admission of a probation violation, at which time the court issued a 10-year criminal protective order.  On appeal, appellant contends the court did not have statutory authority to include appellant's two minor children in the criminal protective order because they were not victims of the crime of which appellant was convicted.  Appellant, however, expressly agreed to those terms when he admitted violating probation, and he was therefore required to obtain a certificate of probable cause before filing his notice of appeal.  Because he failed to do so, we shall dismiss the appeal.

1

## PROCEDURAL BACKGROUND

On March 13, 2018, appellant was charged by information with making criminal threats (Pen. Code, § 422—count 1);[1] assault with a firearm (§ 245, subd. (a)(2)—count 2); corporal injury on a spouse or cohabitant (§ 273.5, subd. (a)—counts 3 & 5); assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)—counts 4 & 6); torture (§ 206—count 7); and cruelty to a child by inflicting injury (§ 273a, subd. (b)—counts 8 & 9). The information alleged as to counts 1 and 2 that appellant personally used a firearm within the meaning of sections 1203.06, subdivision (a)(1) and 12022.5, subdivision (a)(1).

On April 30, 2018, appellant pleaded no contest to count 4 and the prosecution dismissed the remaining charges with a *Harvey*[2] waiver.

On June 22, 2018, the trial court placed appellant on formal probation for three years. The court ordered appellant to have no contact with the victim—his wife—except for telephone contact for child-exchange purposes and in-person contact for exchange of the children under police supervision.

On July 25, 2019, the prosecutor filed a request for revocation of appellant's probation for failure to obey the criminal protective order. On August 16, 2019, appellant admitted the probation violation and his probation was revoked.

On September 19, 2019, the court sentenced appellant to the middle term of three years in state prison on count 4, assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). The court issued a new 10-year criminal protective order prohibiting appellant from contact with his

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Harvey* (1979) 25 Cal.3d 754, 758.

wife, as well as his two minor children, with an exception for a subsequent family law court order permitting visitation between appellant and the children.

On September 25, 2019, appellant filed a notice of appeal.

## FACTUAL BACKGROUND

The following facts are taken from the June 25, 2018 presentence report. Victim, appellant's wife, "went to the Solano County Sheriff's Office in regards to a domestic violence complaint. [The victim] stated she and the defendant had been married for 10 years but were separated and have two children ages 9 and 6. On 4-28-17, [the victim] went to the home of the defendant's parents to pick up her children and take them to her home. As the victim walked up to the front door of the home, the defendant opened the door. The victim told police the defendant had been upset with her because she was six and a half months pregnant and refused to get an abortion.

"The defendant had a gun in his left hand while standing near the door. When the victim greeted the defendant, he began yelling obscenities in Arabic at her. He pointed the handgun at the victim's head and stated in Arabic, 'Bitch, you're going to die.' The victim told sheriff's deputies she was scared for her life and genuinely believed the defendant was going to kill her because she refused to get an abortion. During the altercation, the victim and defendant's two children were standing near the doorway and could see both the defendant and the victim.

"The defendant reached out and pushed the victim, causing her to fall backwards and down four concrete steps from the porch onto the ground and twist her ankle. When brought into the house by her father-in-law, the defendant poked at her with a wooden broom, striking her once in the face. Eventually, the victim was able to go out to her vehicle with her children,

3

however, the defendant punched the victim once while she was sitting in the driver's seat of her vehicle.

"The victim went home with her children and a few hours later, the defendant arrived and kicked and beat the victim throughout the evening, resulting in the victim's two front teeth being broken. As the victim was searching for her teeth on the floor while actively bleeding, the defendant continued to strike her multiple times all over her body. [The victim] finally told one of her children to call the police. The defendant said 'sorry' and then left the residence. [The victim] told deputies their two children were home and saw the incident between the defendant and the victim."

## DISCUSSION

### I. *Trial Court Background*

At the August 16, 2019 hearing on appellant's probation violation, defense counsel asked that the two minor children not be included in the 10-year criminal protective order as a term of appellant's admission of probation violation, as the prosecution had requested. Counsel believed it would be best to let the family law court determine whether there should be contact between appellant and the children. The court rejected this request, stating if the parties did not reach an agreement and appellant went forward with a probation revocation hearing, the court would include the minor children, as well as appellant's wife, in the 10-year protective order, subject to any changes made in a subsequent family law order. When the court asked if appellant "wish[ed] to admit under those terms or not," or if the court should instead set a hearing on the probation violation, defense counsel responded that appellant was prepared to admit the probation violation "with the terms that [the court] just indicated."

The court then engaged in the following exchange with appellant.

4

"THE COURT: [Appellant], did you hear and understand all of that?

"THE DEFENDANT: Yes.

"THE COURT: Did you wish to admit knowing these are the consequences?

"THE DEFENDANT: Yes."

After appellant affirmed that he understood all the rights he had given up when he signed and initialed the waiver of rights form, under which he would receive the midterm of three years in prison and any new charges based on the probation violation would be dismissed, the following exchange took place.

"THE COURT: You understood and heard everything regarding the ten-year protective order, no contact with the victim in this case along with the children except as set forth in any valid law family court order issued after this date. Do you understand all that?

"THE DEFENDANT: Yes.

"THE COURT: Having all these rights and consequences in mind, is it your desire to give up these rights in order to admit you violated your probation?

"THE DEFENDANT: Yes."

Appellant then admitted that he had violated the probation condition that he obey all laws when he made contact with the victim, in violation of a lawful restraining order (§ 273.6). The court accepted appellant's admission, found that it was knowing, intelligent, and voluntary, and set the sentencing hearing for a month later.

Prior to sentencing, defense counsel filed a supplemental sentencing memorandum in which she argued that there was no legal authority or evidentiary grounds for including the two minor children in the criminal

protective order and that, moreover, the children and the victim did not wish for them to be included.  Although counsel acknowledged that during the hearing at which appellant admitted the probation violation, "the court emphasized that [appellant] was to have 'no contact with the victim along with the children except as set forth in any valid law family court order [*sic*]' issued after the date of his plea," she further stated that appellant "stands by his admission of the probation violation, but disputes the validity of the CPO [criminal protective order] as indicated by this court."

The prosecutor filed a responsive memorandum in which she argued that the children should be included in the protective order, noting that this had been an agreed upon component of appellant's admission to a violation of probation in exchange for a three-year prison term and no additional charges related to the violation.  The prosecutor further explained:  "Rather than filing additional violations of [the then current protective order], the People agreed to allow [appellant] to plead to a probation violation for a midterm 3-year resolution and a 10-year CPO for the children and the victim . . . .  On [appellant's] plea form, it clearly indicates that part of the resolution is the agreement not to file any additional charges from violations that occurred before the date of sentencing.  Defense now seeks to persuade the court not to impose a 10-year protective order for the victim and minor children."

At the September 17, 2019 sentencing hearing, following arguments of counsel about whether the children should be included in the criminal protective order, the court sentenced appellant to three years in prison, as previously agreed.  The court then rejected defense counsel's most recent arguments against inclusion of the children in the criminal protective order and issued a protective order on the same terms appellant had agreed to when he admitted the probation violation.

6

## II. *Legal Analysis*

Appellant contends the court did not have authority under section 136.2[3] to include appellant's two minor children in the criminal protective order because they were not victims of the crime of which appellant was convicted.

Before addressing this contention on the merits, we must first address respondent's argument that this claim is not cognizable on appeal because appellant's challenge to the terms of the criminal protective order is in essence a challenge to the validity of his admission of a violation of probation, and appellant did not obtain a certificate of probable cause as is required before such a challenge may be raised on appeal. (See § 1237.5; Cal. Rules of Court, rule 8.304(b)(1).)[4]

Section 1237.5 provides: *"No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation*, except where both of the following are met:

---

[3] Section 136.2, subdivision (i)(1) provides: "When a criminal defendant has been convicted of a crime involving domestic violence as defined in [enumerated statutes], the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime. The order may be valid for up to 10 years, as determined by the court. This protective order may be issued by the court regardless of whether the defendant is sentenced to the state prison or a county jail or subject to mandatory supervision, or whether imposition of sentence is suspended and the defendant is placed on probation. It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family."

[4] All further rule references are to the California Rules of Court.

"(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.

"(b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court." (Italics added.)

"It has long been established that issues going to the validity of a plea require compliance with section 1237.5. [Citation.]" (*People v. Panizzon* (1996) 13 Cal.4th 68, 76 (*Panizzon*); see also *People v. Billetts* (1979) 89 Cal.App.3d 302, 306–308 ["Absent a certificate of probable cause, the issues raised by defendant concerning the validity of his admission of violation of probation, are not reviewable on appeal"]; accord, *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1428.) "The purpose for requiring a certificate of probable cause is to discourage and weed out frivolous or vexations appeals challenging convictions following guilty and nolo contendere pleas. [Citations.]" (*Panizzon*, at p. 75.)

An exception to this rule allows an appeal after a guilty plea or admission of probation violation when the grounds for the appeal "arose after the entry of the plea [or admission] and do not affect [its] validity." (Rule 8.304(b)(4)(B).) "[E]xcept when sentence is imposed pursuant to a plea agreement, the potential grounds for claims of error in sentencing are the same whether the defendant has pleaded guilty or whether he or she has pleaded not guilty and been found guilty after a trial." (*People v. Johnson* (2009) 47 Cal.4th 668, 678.) However, "[e]ven when a defendant purports to challenge only the sentence imposed, a certificate of probable cause is required if the challenge goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement. [Citation.]" (*Ibid.*)

8

"In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: 'the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5 [Citation.]" (*Panizzon*, *supra*, 13 Cal.4th at p. 76; see, e.g., *id.* at pp. 73–74 [certificate of probable cause was required for claim that sentence to which defendant had agreed as part of plea bargain violated constitutional prohibitions against cruel and unusual punishment]; compare *People v. Buttram* (2003) 30 Cal.4th 773, 785 [where parties to plea agreement agree only to a maximum sentence, no certificate of probable cause is required because parties thus "leave unresolved between themselves the appropriate sentence within the maximum"].)

In his notice of appeal, appellant marked the box stating that the appeal was "based on the sentence or other matters occurring after the plea that do not affect the validity of the plea." However, as the exchange between the court, defense counsel, and appellant at the August 16, 2019 probation revocation hearing made clear, a 10-year criminal protective order that included appellant's wife *and* his two minor children was a condition to which appellant agreed when he admitted his probation violation in exchange for certain favorable terms. That the court permitted defense counsel to again argue against inclusion of the children in the criminal protective order at the subsequent sentencing hearing does not change the fact that this provision was an integral part of the plea agreement between the parties. Consequently, appellant's challenge to the terms of the criminal protective

9

order *is* a challenge to the validity of the plea, and he was required to obtain a certificate of probable cause before appealing from the court's imposition of the criminal protective order. (See § 1237.5; rule 8.304(b)(1); see also *People v. Johnson, supra,* 47 Cal.4th at pp. 668, 678; *Panizzon, supra,* 13 Cal.4th at p. 76; cf. *People v. Shelton* (2006) 37 Cal.4th 759, 763, 769 [where plea agreement included a maximum possible ("lid") sentence, but permitted defendant to argue at sentencing that court should exercise its discretion in favor of a shorter term, because "the defendant did not reserve, either expressly or impliedly, a right to challenge the trial court's authority to impose the lid sentence[, his] contention that the lid sentence violated the multiple punishment prohibition of Penal Code section 654 was in substance a challenge to the plea's validity and thus required a certificate of probable cause, which defendant failed to secure"]; *People v. Young* (2000) 77 Cal.App.4th 827, 830 [where defendant had pleaded no contest to all charges and admitted "strike" allegations in exchange for the promise of a maximum sentence of 25 years to life and an opportunity to ask trial court to strike one or more of his prior convictions, his failure to obtain a certificate of probable cause precluded him from challenging on appeal constitutionality of maximum sentence to which he agreed as part of plea bargain].)

In sum, appellant's challenge on appeal to the court's authority include his children in the criminal protective order is "in substance a challenge to the validity of the negotiated plea," for which a certificate of probable cause was required. (*People v. Shelton, supra,* 37 Cal.4th at p. 771.)[5] Given his

_____

[5] We also find unpersuasive appellant's argument that, regardless of "the chronological separation of the post-plea adversary hearing from the entry of plea, the nature of appellant's argument at the adversary hearing shows that appellant's challenge was not to the validity of his plea but to the trial court's jurisdictional authorit*y* to add appellant's minor children to the protective order." As our Supreme Court has explained, however: "The rule

failure to obtain a certificate of probable cause, appellant's appeal must be dismissed.  (See § 1237.5; rule 830.4(b)(1).)

## DISPOSITION

The appeal is dismissed.

---

that defendants may challenge an unauthorized sentence on appeal even if they failed to object below is itself subject to an exception:  Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction."  (*People v. Hester* (2000) 22 Cal.4th 290, 295, citing, inter alia, *People v. Couch* (1996) 48 Cal.App.4th 1053, 1056–1057; *People v. Nguyen* (1993) 13 Cal.App.4th 114, 122–124.)  Here, as in *Hester*, appellant's contention is that the trial court acted in excess of its jurisdiction when it included the children in the protective order, not that it lacked fundamental jurisdiction.  (See *Hester*, at p. 295.)

This case is also distinguishable from two cases cited by appellant, *People v. Corban* (2006) 138 Cal.App.4th 1111 and *People v. Loera* (1984) 159 Cal.App.3d 992.  In *Corban*, "as in *Loera*, defendant raise[d] a purely legal argument—that a particular enhancement could not be used in her case; although the People suggest otherwise, she is not disputing the enhancements in question fit the facts of her offense. . . .  In these circumstances, the challenge is in substance more to the propriety or legality of the sentence than the plea, and no certificate of probable cause was required."  (*Corban*, at p. 1117; but see, e.g., *People v. Zuniga* (2014) 225 Cal.App.4th 1178, 1186 [disagreeing with *Loera* and *Corban*, and concluding that "the better course is to follow [appellate court cases] requir[ing] compliance with section 1237.5 in cases that are, in substance, challenges to the validity of a guilty plea"].)  Here, unlike in *Loera* and *Corban*, appellant's challenge is *not* purely legal.  Rather, he claims that the particular facts of his case do not support the breadth of the criminal protective order that was issued.

11

                                _____

                                Kline, P.J.

We concur:

_____

Stewart, J.

_____

Miller, J.

*People v. Saleh* (A158509)