Filed 9/2/25  P. v. Lopez CA4/3
Opinion following rehearing

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063854 |
| v. | (Super. Ct. No. 13NF2674) |
| ERIC SANCHEZ LOPEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Beatriz M. Gordon, Judge. Reversed and remanded with directions.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In July 2023, Eric Sanchez Lopez filed a petition pursuant to Penal Code[1] section 1172.6 (Petition) in which he requested the trial court vacate his 2015 plea to attempted murder. Lopez claimed he could not currently be convicted of attempted murder. The court denied the Petition at the prima facie stage because Lopez's admission in his plea form that he "attempt[ed] to murder" the victim foreclosed his request for relief.

We conclude the trial court erred. Although Lopez's plea established the necessary mental state for a still-valid form of attempted murder, it did not conclusively prove the actus reus element. The court should not have denied the Petition at the prima facie stage and should have given Lopez an evidentiary hearing. We reverse and remand for it to do so.

FACTS AND PROCEDURAL BACKGROUND

In 2015, in an amended complaint, Lopez and a codefendant were charged with attempted murder (§§ 664, subd. (a), 187, subd. (a); count 1), street terrorism (§ 186.22, subd. (a); count 2), and enhancements alleged as to count one for criminal street gang activity (§ 186.22, subd. (b)(1)) and the vicarious discharge of a firearm (§ 12022.53, subds. (c), (e)(1)). Lopez pled guilty to attempted murder (§§ 664, subd. (a), 187, subd. (a); count 1), and street terrorism (§ 186.22, subd. (a); count 2). He also admitted the gang and

_____

[1] All further statutory references are to the Penal Code.

2

vicarious firearm discharge enhancements (§§ 186.22, subd (b)(1), 12022.53, subds. (c), (e)(1)).

Lopez executed the standard *Tahl*[2] form at the time he entered his guilty pleas. As relevant here, he set forth the following facts for the basis of the plea: "In Orange County, California, on August 3, 2013, I did unlawfully, and with the specific intent to kill, attempt to murder [the victim], a human being. . . . I was a principal in the commission of the felony attempted murder . . . and during the commission of the attempted murder, another princip[al] intentionally discharged a firearm." Before accepting the guilty plea, the trial judge asked Lopez: "Are those written statements true?" Lopez replied, "Yes, your honor." The court sentenced Lopez to 25 years in state prison pursuant to the negotiated plea.

Lopez filed his Petition in July 2023. The request was on a preprinted form on which Lopez placed checkmarks next to applicable boxes including box number five as follows:

"I was convicted of 1st degree felony murder and I could not now be convicted because of changes to Penal Code § 189, effective January 1, 2019, for the following reasons (all must apply):

"I was not the actual killer.

"I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree.

"I was not a major participant in the felony or I did not act with reckless indifference to human life during the course of the crime or felony.

"The victim of the murder was not a peace officer . . . ."

---

[2] *In re Tahl* (1969) 1 Cal.3d 122.

3

The prosecution filed a response and attached a copy of the amended complaint and Lopez's plea form. It argued Lopez's admissions in his guilty plea "satisf[ied] the requirements for attempted murder under current law" and requested that the court deny the Petition at the prima facie stage. Lopez's attorney argued the plea form was insufficient because it did not specify what acts Lopez did in support of what crime and, therefore, the court could not conclude that he was not convicted of a now-invalid theory of attempted murder. The trial court denied the Petition at the prima facie stage concluding that Lopez's admissions in the plea form "foreclose[d] the possibility that [he] was convicted under a natural and probable consequences theory."

Lopez's counsel on appeal filed a brief stating no arguable issues could be found (*People v. Delgadillo* (2022) 14 Cal.5th 216), but directing the court to the following question for consideration: "Did the trial court improperly deny appellant's [P]etition for resentencing pursuant to section 1172.6?" A previous panel from this court affirmed the trial court's denial two to one with the third justice dissenting.

Lopez then filed a petition for rehearing. Following the retirement from the Court of Appeal of the authoring justice, the remaining justices reviewed the petition for rehearing and granted the request. A third justice was added to the panel to consider Lopez's appeal in full. The parties were ordered to submit supplemental briefing and were given an opportunity for oral argument.

DISCUSSION

I.

THE AMENDMENTS TO SECTIONS 188 AND 189

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) amended sections 188 and 189 to eliminate natural and probable consequences liability for murder and to limit the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959.) This legislation also added former section 1170.95, which provided a procedure under which "[a] person convicted of felony murder or murder under a natural and probable consequences theory" could petition for resentencing relief. (Former § 1170.95, subd. (a), added by Stats. 2018, ch. 1015, § 4.) Senate Bill No. 775 (2021–2022 Reg. Sess.) later amended former section 1170.95[3] to clarify that persons who were convicted of "attempted murder under the natural and probable consequences doctrine" could similarly seek resentencing relief. (Former § 1170.95, subd. (a), amended by Stats. 2021, ch. 551, § 2.)

To be eligible for relief under section 1172.6, the petitioner must make a prima facie showing he or she "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) If the Petition makes out a prima facie case for relief, "the court shall issue an order to show cause" and "shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner . . . . " (§ 1172.6, subds. (c), (d)(1).)

---

[3] Effective June 30, 2022, section 1170.95 was renumbered as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.)

5

Our Supreme Court has explained that at the prima facie stage the trial court's examination of the Petition is "'limited'" and "'[t]he record of conviction . . . will necessarily inform the' inquiry." (*People v. Patton* (2025) 17 Cal.5th 549, 562, 564.) The court cannot resolve material factual disputes at the prima facie stage. (*Id.* at p. 567.)

## II.

### LOPEZ'S PETITION FOR RESENTENCING

A guilty plea is "a judicial admission of every element of the offense charged." (*People v. Chadd* (1981) 28 Cal.3d 739, 748 (plur. opn. of Mosk, J.).) It "is the equivalent of a conviction," and by pleading guilty a defendant waives a sufficiency of the evidence challenge. (*People v. Ward* (1967) 66 Cal.2d 571, 574; *In re Troy Z.* (1992) 3 Cal.4th 1170, 1181.)

Relevant here, attempted murder is generally comprised of two elements, namely "(1) a specific intent to kill and (2) a direct but ineffectual act toward accomplishing the intended killing." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605.) Unlike murder, because attempted murder requires express malice, it "cannot be proved based upon a showing of implied malice." (*Ibid*.)

Prior to 2019, there generally were three theories through which a person could be convicted of attempted murder: (1) liability as the direct perpetrator; (2) liability as a direct aider and abettor; and (3) liability as a natural and probable consequences aider and abettor. (See *People v. Perez* (2005) 35 Cal.4th 1219, 1225; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117–1118.) While the first two of those theories required the defendant to personally have a specific intent to kill and to engage in some act vis-à-vis the attempted killing (see *People v. Lee* (2003) 31 Cal.4th 613, 623–624 [discussing direct aiding and abetting attempted murder liability]), the last of

6

those theories did not. Under the natural and probable consequences doctrine, a defendant who knowingly aided and abetted an intended nonmurder crime, commonly referred to as the target offense, was also guilty of any other crime the perpetrator actually committed that was a natural and probable consequence of the intended crime, commonly referred to as the nontarget offense, irrespective of whether the defendant had any intent regarding the nontarget offense. (See *People v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*); *McCoy,* at p. 1117; *People v. Canizalez* (2011) 197 Cal.App.4th 832, 852.) Depending on the circumstances of a given situation, attempted murder could be a nontarget offense. (*People v. Favor* (2012) 54 Cal.4th 868, 874, abrogated by statute on other grounds as stated in *People v. Hin* (2025) 17 Cal.5th 401, 442.)

After legislative changes to the murder statutes took effect in January 2019, the natural and probable consequences doctrine could no longer be used to convict someone of attempted murder, among other crimes. (*Curiel, supra*, 15 Cal.5th at p. 449; *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) In contrast, direct perpetrator and direct aider and abettor theories of liability remain viable. (See *Curiel,* at p. 462; *Coley,* at p. 548.)

Here, in the factual basis for his guilty plea, Lopez admitted he, "with the specific intent to kill, attempt[ed] to murder [the victim]." He further admitted he "was a principal in the commission of the felony attempted murder" and "during the commission of the attempted murder, another princip[al] intentionally discharged a firearm."

By including in his factual basis that he acted "with the specific intent to kill," Lopez made a factual admission of possessing a specific intent to kill. This was sufficient to conclusively establish one element of attempted

murder. (See *People v. Ramos* (2024) 103 Cal.App.5th 460, 466.) It removes any possibility that his admitted liability was premised on imputed malice.

But, "an intent to kill finding does not itself conclusively establish that a petitioner is ineligible for relief" under section 1172.6. (*Curiel, supra*, 15 Cal.5th at p. 461.) One purpose of the statute is "'to ensure that murder culpability is commensurate with a person's actions.'" (*Id.* at p. 464.) Thus, "[i]f only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of *other* elements." (*Id.* at p. 463.)

Lopez's record of conviction does not conclusively establish the actus reus element of a still-valid theory attempted murder. In the factual basis, he admitted he "attempt[ed] to murder [the victim]." Unlike the word "kill," the word "murder" is a legal term of art. (See § 187, subd. (a) [defining murder as "the unlawful killing of a human being, or a fetus, with malice aforethought"].) Thus, this portion of Lopez's admission is susceptible to two different but equally reasonable meanings: one, that he factually admitted to attempting to kill the victim; or two, that he made a legal admission his actions were sufficient to establish the actus reus of attempted murder.

Under the second meaning, Lopez did not necessarily factually admit he performed a direct but ineffectual act toward the killing. Likewise, he did not necessarily make a factual admission of any act directed toward the killing, as opposed to a target offense, that would have qualified him as a direct aider and abettor. Thus, the record does not rule out the possibility Lopez simply admitted to an act that made him an aider and abettor on a natural and probable consequences theory. (See *People v. Prettyman* (1996) 14 Cal.4th 248, 262 [natural and probable consequences aider and abettor

8

commits act that aids or encourages commission of target crime]; c.f. *Curiel, supra,* 15 Cal.5th at p. 467 [in natural and probable consequences situation, act that aids or encourages target crime cannot be said to necessarily also aid or encourage nontarget crime].)

The Attorney General disagrees and points us to a recent decision it contends is "directly on point": *People v. Glass* (2025) 110 Cal.App.5th 922 (*Glass*). The Attorney General argues *Glass* "affirmed a prima facie denial because the petitioner's guilty plea admitted that he "'[d]id unlawfully attempt to murder a human being.""" (See *id.* at p. 926.) Not exactly.

The defendant in *Glass* was charged with the murder of one victim, the attempted murder of a second victim, shooting at an inhabited dwelling, and personally using a firearm. (*Glass, supra*, 110 Cal.App.5th at p. 926.) The defendant pled guilty to voluntary manslaughter, admitted he personally used a firearm in the commission of that offense, and pled guilty to attempted murder. (*Ibid.*) As a factual basis for the plea, the defendant stated he "'[d]id unlawfully kill a human being without malice upon a sudden quarrel [in the] heat of passion,' and 'did specifically use a firearm in the commission of this offense'; and [he] '[d]id unlawfully attempt to murder a human being.'" (*Ibid.*) At the plea hearing, the trial court asked if it was true that "'you also did unlawfully attempt to murder another separate human being,'" to which the defendant responded, "'Yes, sir.'" (*Ibid.*)

In *Glass,* the defendant filed a Petition but "offered no specific facts in support of his conclusory allegation" that his convictions were no longer valid. (*Glass, supra*, 110 Cal.App.5th at p. 927.) The trial court denied the defendant's Petition at the prima facie stage. (*Id.* at p. 928.) The Court of Appeal agreed with the court because the defendant was the only person charged in the complaint, and in his plea form, "Glass admitted he personally

9

used a firearm when he 'unlawfully kill[ed] a human being'" and also admitted he "'unlawfully attempt[ed] to murder'" another human being. (*Ibid.*) Moreover, at the plea hearing, he affirmed it was true that "'[he] did unlawfully attempt to murder another separate human being.'" (*Id.* at pp. 928–929.)

Here, unlike in *Glass*, there were two individuals charged with attempted murder, and Lopez admitted someone else used the firearm in the commission of that offense. Further, Lopez did not make any statements at the plea hearing demonstrating he personally attempted to murder another human being. Moreover, in his Petition, Lopez made specific factual assertions, including his sworn statements that he "was not the actual killer," and he did not "assist the actual killer." *Glass* is not on point.

## DISPOSITION

We reverse the trial court's prima facie denial of Lopez's Petition for resentencing. We remand with directions that the court issue an order to show cause and hold an evidentiary hearing on Lopez's Petition pursuant to the procedures in section 1172.6. (§ 1172.6, subd. (c), (d)(1).)


DELANEY, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J

10